(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KEMP *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 21–5726. Argued April 19, 2022—Decided June 13, 2022

Petitioner Dexter Kemp and seven codefendants were convicted of various drug and gun crimes. The Eleventh Circuit consolidated their appeals and, in November 2013, affirmed their convictions and sentences. In April 2015, Kemp moved the District Court to vacate his sentence under 28 U. S. C. §2255. The District Court dismissed Kemp's motion as untimely because it was not filed within one year of "the date on which [his] judgment of conviction [became] final." §2255(f)(1). Kemp did not appeal. Then, in June 2018, Kemp sought to reopen his §2255 proceedings under Federal Rule of Civil Procedure 60(b), which authorizes a court to reopen a final judgment under certain enumerated circumstances. As relevant here, a party may seek relief within one year under Rule 60(b)(1) based on "mistake, inadvertence, surprise, or excusable neglect." A party may also seek relief "within a reasonable time" under Rule 60(b)(6) for "any other reason that justifies relief," but relief under Rule 60(b)(6) is available only when the other grounds for relief specified in Rules 60(b)(1)–(5) are inapplicable. Kemp's motion to reopen his §2255 proceedings invoked Rule 60(b)(6), but his motion sought reopening based on a "mistake" covered by Rule 60(b)(1). Specifically, Kemp argued that the 1-year limitations period on his §2255 motion did not begin to run until his codefendants' rehearing petitions were denied in May 2014, making his April 2015 motion timely. The Eleventh Circuit agreed with Kemp that his §2255 motion was timely but concluded that because Kemp alleged judicial mistake, his Rule 60(b) motion fell under Rule 60(b)(1), was subject to Rule 60(c)'s 1-year limitations period, and was therefore untimely.

*Held*: The term "mistake" in Rule 60(b)(1) includes a judge's errors of

law. Because Kemp's motion alleged such a legal error, it was cognizable under Rule 60(b)(1) and untimely under Rule 60(c)'s 1-year limitations period. Pp. 3–10.

(a) As a matter of text, structure, and history, a "mistake" under Rule 60(b)(1) includes a judge's errors of law. When the Rule was adopted in 1938 and revised in 1946, the word "mistake" applied to any "misconception," "misunderstanding," or "fault in opinion or judgment." Webster's New International Dictionary 1383. Likewise, in its legal usage, "mistake" included errors "of law or fact." Black's Law Dictionary 1195. Thus, regardless whether "mistake" in Rule 60(b)(1) carries its ordinary meaning or legal meaning, it includes a judge's mistakes of law. Rule 60(b)(1)'s drafters could have used language to connote a narrower understanding of "mistake," yet they chose not to qualify that term. Similarly, the Rule's drafters could have excluded mistakes by judges from the Rule's reach. In fact, the Rule used to read that way. When adopted in 1938, Rule 60(b) initially referred to "his"—*i.e.,* a party's—"mistake," so judicial errors were not covered. The 1946 revision to the Rule deleted the word "his," thereby removing any limitation on whose mistakes could qualify. Pp. 4–6.

(b) Neither the Government nor Kemp offers a reason to depart from this reading of Rule 60(b)(1). Pp. 6–10.

(1) The Government contends that the term "mistake" encompasses only so-called "obvious" legal errors. This contention—also held by several Courts of Appeals—is unconvincing. None of the dictionaries from the time the Rule was adopted and revised suggests this "obviousness" gloss. Nor does the text or history of Rule 60(b)(1) limit its reach only to flagrant cases that would have historically been corrected by courts sitting in equity. Finally, requiring courts to decide not only whether there was a mistake but also whether that mistake was sufficiently "obvious" raises questions of administrability. P. 6.

(2) Kemp's arguments for limiting Rule 60(b)(1) to non-judicial, non-legal errors are also unconvincing. He claims that Rule 60(b)(1)'s other grounds for relief—"inadvertence," "surprise," and "excusable neglect"—involve exclusively non-legal, non-judicial errors, and thus "mistake" should be similarly limited. But courts have found that excusable neglect may involve legal error, see, *e.g., Lenaghan* v. *Pepsico, Inc.,* 961 F. 2d 1250, 1254–1255, and they have a similar history of granting relief based on "judicial inadvertence," *Larson* v. *Heritage Square Assocs.*, 952 F. 2d 1533, 1536. Kemp argues that Rule 60's structure favors interpreting the term "mistake" narrowly to include only non-legal errors, and the Court's contrary interpretation would create confusing overlap between Rule 60(b)(1) and relief available under other parts of Rule 60 not subject to Rule 60(c)'s 1-year limitations period. But the overlap Kemp suggests would exist even if "mistake"

Syllabus

reached only factual errors.　Courts of Appeals have well-established tests for distinguishing between these Rules.　And should such overlap ever create an irreconcilable conflict, courts may then resort to ordinary interpretive rules to determine which Rule to apply.　As for Kemp's worry that the Court's interpretation would allow parties to evade other time limits by, for example, repackaging a tardy motion under Rule 59(e), the risk Kemp identifies would exist even under his own interpretation.　And, in any event, the alleged specter of litigation gamesmanship and strategic delay is overstated because a Rule 60(b)(1) motion, like all Rule 60(b) motions, must be made "within a reasonable time."　Finally, Kemp protests that this Court's reading is inconsistent with the history of Rule 60(b).　But his argument is based on the mistaken notions that Rule 60(b)(1)'s list of grounds for reopening was understood to be a "term of art" when adopted, and that Rule 60(b)(6) alone was intended to afford relief for judicial legal errors that had previously been remedied by bills of review.　Pp. 6–10.

857 Fed. Appx. 573, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, ALITO, SOTOMAYOR, KAGAN, KAVANAUGH, and BARRETT, JJ., joined.　SOTOMAYOR, J., filed a concurring opinion.　GORSUCH, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 21–5726

———

## DEXTER EARL KEMP, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 13, 2022]

JUSTICE THOMAS delivered the opinion of the Court.

Federal Rule of Civil Procedure 60(b)(1) allows a party to seek relief from a final judgment based on, among other things, a "mistake." The question presented is whether the term "mistake" includes a judge's error of law. We conclude, based on the text, structure, and history of Rule 60(b), that a judge's errors of law are indeed "mistake[s]" under Rule 60(b)(1).

I

In 2011, a federal jury convicted Dexter Kemp of various drug and gun crimes, and he was sentenced to 420 months in prison. Kemp, along with seven codefendants, appealed. The Eleventh Circuit consolidated their appeals and, in November 2013, affirmed their convictions and sentences. *United States* v. *Gray*, 544 Fed. Appx. 870. Kemp did not seek rehearing of the Eleventh Circuit's judgment or petition this Court for certiorari. Two of Kemp's codefendants did seek rehearing, which the Eleventh Circuit denied in May 2014.

In April 2015, Kemp moved the U. S. District Court for

the Southern District of Florida to vacate his sentence un-
der 28 U. S. C. §2255. The Government objected that
Kemp's §2255 motion was untimely. As relevant here, such
motions must be filed within one year of "the date on which
the judgment of conviction becomes final." §2255(f)(1). For
someone who, like Kemp, does not petition this Court for
certiorari, a judgment becomes final when the time to seek
certiorari expires—ordinarily, 90 days after judgment. See
*Clay* v. *United States*, 537 U. S. 522, 525 (2003); this Court's
Rule 13.1. In this case, the District Court concluded that
Kemp's judgment became final in February 2014 (90 days
after the Eleventh Circuit's judgment affirming his convic-
tion and sentence), making his April 2015 motion over two
months late. The District Court dismissed Kemp's motion
in September 2016, and Kemp did not appeal.

In June 2018—almost two years later—Kemp attempted
to reopen his §2255 proceedings under Federal Rule of Civil
Procedure 60(b), which authorizes a court to reopen a final
judgment under certain enumerated circumstances. Rule
60(b)(1) permits a district court to reopen a judgment for
"mistake, inadvertence, surprise, or excusable neglect," so
long as the motion is filed "within a reasonable time," and,
at most, one year after the entry of the order under review.
See Fed. Rules Civ. Proc. 60(b)(1), (c)(1). Meanwhile, Rule
60(b)(6) permits reopening for "any other reason that justi-
fies relief," so long as the motion is filed "within a reasona-
ble time." Rule 60(c)(1).

Kemp invoked Rule 60(b)(6), but his motion arguably
sought reopening based on a kind of "mistake" covered by
Rule 60(b)(1). Specifically, Kemp argued that reopening
was warranted because this Court's Rule 13.3 prescribes
that the 90-day clock to seek certiorari does not begin to run
until *all* parties' petitions for rehearing are denied, and the
Eleventh Circuit denied his codefendants' rehearing peti-
tions in May 2014. Thus, according to Kemp, the 1-year

period to file his §2255 motion began in August 2014, making his April 2015 motion timely.

The District Court rejected this timeliness argument and, in the alternative, held that Kemp's Rule 60(b) motion was itself untimely. The Eleventh Circuit affirmed. 857 Fed. Appx. 573 (2021) (*per curiam*). While it agreed with Kemp that his original §2255 motion "appear[ed] to have been timely," the Eleventh Circuit nonetheless concluded that he had filed his Rule 60(b) motion too late. *Id.,* at 575–576. The Eleventh Circuit held that Kemp's reopening motion alleged "precisely the sort of judicial mistak[e] in applying the relevant law that Rule 60(b)(1) encompasses," and thus was subject to Rule 60(b)(1)'s 1-year limitations period. *Id.,* at 576.

Kemp petitioned this Court for review, and we granted certiorari to resolve the Courts of Appeals' longstanding disagreement whether "mistake" in Rule 60(b)(1) includes a judge's errors of law.[1] 595 U. S. \_\_\_ (2022).

II

Federal Rule of Civil Procedure 60(b) permits "a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez* v. *Crosby*, 545 U. S. 524, 528 (2005). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect." Rules 60(b)(2) through (b)(5) supply other grounds for reopening a judgment. Finally, Rule 60(b)(6) provides a catchall for "any other reason that justifies relief." This last option is available only when

_____

[1] Compare *Spinar* v. *South Dakota Bd. of Regents*, 796 F. 2d 1060, 1063 (CA8 1986) (Rule 60(b)(1) does not cover claims "that the court erred as a matter of law"); *Elias* v. *Ford Motor Co.*, 734 F. 2d 463, 467 (CA1 1984) (same), with *Mendez* v. *Republic Bank*, 725 F. 3d 651, 659 (CA7 2013) (Rule 60(b)(1) "allows a district court to correct its own [legal] errors"); *In re 310 Assocs.*, 346 F. 3d 31, 35 (CA2 2003) (*per curiam*) (same); *United States* v. *Reyes*, 307 F. 3d 451, 455 (CA6 2002) (same); *Parks* v. *U. S. Life & Credit Corp.*, 677 F. 2d 838, 839–840 (CA11 1982) (*per curiam*) (same).

Rules 60(b)(1) through (b)(5) are inapplicable. See *Liljeberg* v. *Health Services Acquisition Corp.*, 486 U. S. 847, 863, n. 11 (1988). Even then, "'extraordinary circumstances'" must justify reopening. *Ibid.*

Rule 60(c) imposes deadlines on Rule 60(b) motions. All must be filed "within a reasonable time." Rule 60(c)(1). But for some, including motions under Rule 60(b)(1), that "reasonable time" may not exceed one year. Rule 60(c)(1). Motions under Rule 60(b)(6) are not subject to this additional 1-year constraint. Rule 60(c)(1).

Here, the parties dispute the extent to which a judge's legal errors qualify as "mistake[s]" under Rule 60(b)(1). The Government contends that Rule 60(b)(1) applies any time a party alleges that a judge has made an "obvious" legal error—*e.g.,* the "failure to apply unambiguous law to record facts." Brief for United States 11. Kemp's motion, the Government says, alleged an obvious legal error, so the Eleventh Circuit was correct to apply Rule 60(b)(1). According to Kemp, however, Rule 60(b)(1) applies only to factual errors made by someone other than the judge. Brief for Petitioner 3. So, in Kemp's view, his motion challenging the District Court's timeliness ruling was cognizable under Rule 60(b)(6), and the 1-year limit did not apply.

We ultimately disagree with Kemp and agree with the Government to a point. As a matter of text, structure, and history, the Government is correct that a "mistake" under Rule 60(b)(1) includes a judge's errors of law. But we see no reason to limit Rule 60(b)(1) to "obvious" legal mistakes, as the Government proposes. We first explain why Rule 60(b)(1) covers all mistakes of law made by a judge, and then address why the Government's and Kemp's contrary interpretations of "mistake" do not persuade us.

A

The ordinary meaning of the term "mistake" in Rule 60(b)(1) includes a judge's legal errors. When the Rule

was adopted in 1938 and revised in 1946, the word "mistake" applied to any "misconception," "misunderstanding," or "fault in opinion or judgment." Webster's New International Dictionary 1383 (1914) (Webster's); see also Funk & Wagnalls New Standard Dictionary of the English Language 1588 (1944) (Funk & Wagnalls) (defining "mistake" as an "error in action, judgment, or perceptions," including, *e.g.,* "a *mistake* in calculation"). In ordinary usage, then, a "mistake" was not limited only to factual "misconception[s]" or "misunderstanding[s]," or to mistakes by non-judicial actors. Webster's 1383. Likewise, in its legal usage, "mistake" included errors "of law or fact." Black's Law Dictionary 1195 (3d ed. 1933) (Black's). Thus, regardless whether "mistake" in Rule 60(b)(1) carries its ordinary meaning or legal meaning, it includes a judge's mistakes of law.

Had the drafters of Rule 60(b)(1) intended a narrower meaning, they "easily could have drafted language to that effect." *Mississippi ex rel. Hood* v. *AU Optronics Corp.*, 571 U. S. 161, 169 (2014). The difference between "mistake of fact" and "mistake of law" was well known at the time. Both lay and legal dictionaries identified them as distinct categories. See Funk & Wagnalls 1588; Black's 1195. Thus, Rule 60(b)(1)'s drafters had at their disposal readily available language that could have connoted a narrower understanding of "mistake." Yet they chose to include "mistake" unqualified.

Similarly, Rule 60(b)(1)'s drafters could just as easily have excluded mistakes by judges from the Rule's ambit. In fact, the Rule used to read that way. When adopted in 1938, Rule 60(b) initially referred to "his"—*i.e.,* a party's—"mistake," so judicial errors were not covered. Fed. Rule Civ. Proc. 60(b) (1938). In 1946, however, the Rule's amenders deleted the word "his," thereby removing any limitation on whose mistakes could qualify. See Fed. Rule Civ. Proc. 60(b)(1) (1946). Thus, as currently written, "mistake" in

Rule 60(b)(1) includes legal errors made by judges.[2]

### B

Both the Government's and Kemp's interpretations of
Rule 60(b) depart from aspects of our reading. Their rea-
sons for doing so are unavailing.

### 1

The Government contends that the term "mistake" en-
compasses only so-called "obvious" legal errors. Brief for
United States 11. Several Courts of Appeals agree that
Rule 60(b)(1) may be used to correct only "'obvious errors'
of law, such as overlooking controlling statutes or case law."
*In re Ta Chi Navigation (Panama) Corp. S. A.*, 728 F. 2d
699, 703 (CA5 1984). The Government argues that this lim-
itation "has historical roots" because courts of equity tradi-
tionally "could grant relief from legal errors, but only 'in the
most unquestionable and flagrant cases.'" Brief for United
States 18 (quoting *Snell* v. *Insurance Co.*, 98 U. S. 85, 91
(1878)).

We are unconvinced. None of the English language or
legal dictionaries noted above, *supra,* at 4–5, suggests this
"obviousness" gloss. Nor does the Government tie the eq-
uity practice it invokes to the text or history of Rule 60(b).
Finally, we question the administrability of a rule that re-
quires courts to decide not only whether there was a "mis-
take" but also whether that mistake was sufficiently "obvi-
ous." The text does not support—let alone require—that
judges engage in this sort of complex line-drawing.

### 2

We are similarly unconvinced by Kemp's arguments for

---

[2] Here, Kemp alleged that the District Court erred by misapplying con-
trolling law to record facts. In deciding that this alleged error is a "mis-
take," we do not decide whether a judicial decision rendered erroneous
by subsequent legal or factual changes also qualifies as a "mistake" un-
der Rule 60(b)(1).

limiting Rule 60(b)(1) to non-judicial, non-legal errors.

While Kemp does not dispute that "mistake" ordinarily would cover both legal and factual errors, he argues that the other grounds for relief in Rule 60(b)(1)—"inadvertence," "surprise," and "excusable neglect"—involve exclusively non-legal, non-judicial errors, and the word "mistake" should therefore be similarly limited. But courts have long found that excusable neglect may involve legal error. See, *e.g., Lenaghan* v. *Pepsico, Inc.*, 961 F. 2d 1250, 1254–1255 (CA6 1992) (*per curiam*) ("understandable, albeit mistaken, reading of" a local rule); *A. F. Dormeyer Co.* v. *M. J. Sales & Distribution Co.*, 461 F. 2d 40, 42–43 (CA7 1972) (misunderstanding of summons and relevant legal rules); *Provident Security Life Ins. Co.* v. *Gorsuch*, 323 F. 2d 839, 843 (CA9 1963) (erroneous understanding of Federal Rule of Civil Procedure 12). And they have a similar history of granting relief based on "*judicial* inadvertence." *Larson* v. *Heritage Square Assocs.*, 952 F. 2d 1533, 1536 (CA8 1992) (emphasis added); see also, *e.g., O'Tell* v. *New York, N. H. & H. R. Co.*, 236 F. 2d 472, 475 (CA2 1956) (judge's failure to deduct setoff in entering judgment was "inadvertence" under Rule 60(b)). Because the words surrounding "mistake" in Rule 60(b)(1) do not connote exclusively non-legal or non-judicial errors, they do not favor Kemp's narrower reading.

Kemp also argues that Rule 60's structure favors interpreting the term "mistake" narrowly. Our interpretation, he contends, would create confusing overlap between Rule 60(b)(1) and Rule 60(a), which authorizes a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." We disagree. Because Rule 60(a) covers a subset of "mistake[s]"—*e.g.,* "clerical" ones—whereas Rule 60(b)(1) covers "mistake[s]" *simpliciter*, the overlap Kemp alleges would exist even if "mis-

take" reached only factual errors. And the Courts of Appeals have well-established rules for determining when Rule 60(a), rather than Rule 60(b), should apply. See, *e.g., United States* v. *Griffin*, 782 F. 2d 1393, 1397 (CA7 1986).

Kemp alleges that our interpretation of Rule 60(b)(1) would create a similar problem with respect to Rules 60(b)(4) and (b)(5), which authorize relief from voided judgments and judgments that lack legal effect. Specifically, Kemp contends that a legal "mistake" could warrant relief under both Rule 60(b)(1) and Rule 60(b)(4) or Rule (b)(5), and a conflict could then arise given that the latter Rules are not subject to a 1-year time limit. But, again, that could occur even if only factual errors count as "mistake[s]," since factual errors, too, may justify relief under Rules 60(b)(4) and (b)(5). And, regardless, should this overlap ever create an irreconcilable conflict, courts may then resort to ordinary rules of statutory construction when selecting which provision would govern in a particular case. See, *e.g., RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U. S. 639, 645 (2012) ("'the specific governs the general'").

Kemp also worries that our interpretation would allow parties to evade other time limits set forth in the Federal Rules. For instance, Rule 59(e) motions to alter or amend a judgment must be filed within 28 days, and appeals must generally be filed within 30 days, see Fed. Rule App. Proc. 4(a)(1)(a). Kemp suggests that our interpretation would allow someone to repackage a tardy Rule 59(e) motion as a timely Rule 60(b)(1) motion, or to generate a right to an untimely appeal by filing a Rule 60(b)(1) motion and appealing once it is denied. We are unpersuaded because, yet again, the risk Kemp identifies would exist even under his own interpretation. For example, Kemp provides no explanation why, under his interpretation of Rule 60(b), parties could not repackage tardy Rule 59(e) motions based on legal errors as motions under Rule 60(b)(6), or recharacterize

tardy motions based on factual errors as motions under Rule 60(b)(1). A denial in either case would then permit the litigant to appeal outside Appellate Rule 4's 30-day time limit.

In any event, the alleged specter of litigation gamesmanship and strategic delay is overstated. Rule 60(b)(1) motions, like all Rule 60(b) motions, must be made "within a reasonable time." Fed. Rule Civ. Proc. 60(c)(1). And while we have no cause to define the "reasonable time" standard here, we note that Courts of Appeals have used it to forestall abusive litigation by denying Rule 60(b)(1) motions alleging errors that should have been raised sooner (*e.g.,* in a timely appeal). See, *e.g.*, *Mendez* v. *Republic Bank*, 725 F. 3d 651, 660 (CA7 2013).

Nor, contrary to Kemp's protestations, is our interpretation inconsistent with the history of Rule 60(b). Kemp points out that Rule 60(b)(1) drew its text from existing state procedural rules. See, *e.g.,* Cal. Civ. Proc. Code §473 (Deering 1937). And he argues that its list of grounds for reopening—"'mistake, inadvertence, surprise, and excusable neglect'"—was understood when Rule 60(b) was adopted to be a "term of art" that excluded legal errors. Brief for Petitioner 10. But while some States interpreted their rules this way, see, *e.g., Lucas* v. *North Carolina Mut. Life Ins. Co.*, 184 S. C. 119, 120, 191 S. E. 711, 712 (1937) (collecting cases), others, like California, did not, see, *e.g., Mitchell* v. *California & O. C. S. S. Co.*, 156 Cal. 576, 578, 105 P. 590, 592 (1909). Moreover, at least one leading treatise from the era maintained, consistent with our view, that "mistake" encompassed legal errors. See 3 J. Moore & J. Friedman, Moore's Federal Practice §60.05, p. 3280 (1938). Although statutory language "obviously transplanted from another legal source" will often "bring the old soil with it," *Taggart* v. *Lorenzen*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 5) (internal quotation marks and alterations omitted), that

principle applies only when a term's meaning was "well-set-
tled" before the transplantation, *Neder* v. *United States*,
527 U. S. 1, 22 (1999). Here, it was not.

Finally, Kemp invokes Rule 60(b)'s 1946 amendments re-
placing "bills of review" and other traditional, postjudgment
reopening mechanisms with Rules 60(b)(2) through (b)(6).
See Fed. Rule Civ. Proc. 60(b) (1946). He argues that
Rule 60(b)(6) alone was intended to afford relief for judicial
legal errors that had previously been remedied by bills of
review, because such errors were not cognizable under
Rule 60(b)'s "mistake" provision or its predecessor state
rules prior to the 1946 amendments. But, as noted, the pre-
amendment Rule 60(b) covered only a party's mistakes, see
*supra,* at 5–6, and for *that* reason could not be grounds to
correct a judge's legal mistake. By eliminating that party-
specific qualifier, the 1946 amendments opened Rule
60(b)(1) to judicial mistakes of law previously remediable
only by bills of review.

*        *        *

In sum, nothing in the text, structure, or history of
Rule 60(b) persuades us to narrowly interpret the otherwise
broad term "mistake" to exclude judicial errors of law. Be-
cause Kemp's Rule 60(b) motion alleged such a legal error,
we affirm the Eleventh Circuit's judgment that the motion
was cognizable under Rule 60(b)(1), subject to a 1-year lim-
itations period, and, therefore, untimely.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–5726

_____

## DEXTER EARL KEMP, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 13, 2022]

JUSTICE SOTOMAYOR, concurring.

I join the Court's opinion holding that the term "mistake" in Federal Rule of Civil Procedure 60(b)(1) encompasses a judge's mistake of law. I write separately to make two points.

First, I join the Court's opinion with the understanding that nothing in it casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law. See, *e.g., Buck* v. *Davis*, 580 U. S. 100, 126, 128 (2017) (concluding that the petitioner was "entitle[d] to relief under Rule 60(b)(6)" because of a change in law and intervening developments of fact); *Gonzalez* v. *Crosby*, 545 U. S. 524, 531 (2005) ("[A] motion might contend that a subsequent change in substantive law is a 'reason justifying relief,' Fed. Rule Civ. Proc. 60(b)(6), from the previous denial of a claim"); *Polites* v. *United States*, 364 U. S. 426, 433 (1960) (leaving open that a "clear and authoritative change" in the law governing judgment in a case may present extraordinary circumstances). Today's decision does not purport to disturb these settled precedents.

Second, I do not understand the Court's opinion to break any new ground as to Rule 60(c)(1), which requires that all Rule 60(b) motions be "made within a reasonable time." See 11 C. Wright, A. Miller, & M. Kane, Federal Practice and

Procedure §2866 (3d ed. 2022) ("What constitutes reasonable time necessarily depends on the facts in each individual case").

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–5726

_____

## DEXTER EARL KEMP, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 13, 2022]

JUSTICE GORSUCH, dissenting.

The Court took this case to determine whether a district court's mistake of law is correctable under Federal Rule of Civil Procedure 60(b)(1) or 60(b)(6).

From the start, granting review was a questionable use of judicial resources. The answer matters only under rare circumstances: A losing party fails to appeal or secure relief under Rule 59(e), opting instead to file a Rule 60(b) motion. That motion comes more than a year after judgment but—piling contingency on contingency—within what the court would otherwise deem a "reasonable time." Rule 60(c)(1). By petitioner's own (uncontested) count, his is the first petition *ever* to present today's question for this Court's review. See Pet. for Cert. 24; Brief in Opposition 26. Beyond even that, an alternative route exists to resolve the question posed here. Congress has adopted the Rules Enabling Act. See 28 U. S. C. §§ 2071–2077. Under its terms, a committee composed of judges and practitioners may recommend to this Court any warranted clarifications to the Federal Rules of Civil Procedure. § 2073. Those recommendations generally take effect upon our approval and absent congressional objection. § 2074.

Undeterred, the Court takes up and resolves this case anyway. It holds that Rule 60(b)(1), not Rule 60(b)(6), applies. In an unexpected twist, the Court adopts a further position

neither party saw fit to advance.  Going forward, *every* judicial legal error—not just an inadvertent or obvious "mistake"—is fodder for collateral attack under Rule 60(b)(1). And what is the basis for all this?  A mysterious 1946 amendment deleting the word "'his.'"  See *ante*, at 5–6.

Respectfully, I would have dismissed the writ of certiorari as improvidently granted.  Not only does this case fail to meet our usual standards for review.  See Supreme Court Rule 10.  At bottom, this dispute presents a policy question about the proper balance between finality and error correction.  Should a district court be able to clean up a legal error through a collateral proceeding on any reasonable timeline within a year of judgment?  Or do Rule 59(e) and the appellate process provide the necessary corrective measures in ordinary cases, with Rule 60(b)(6) as a last, narrow avenue to relief?  Questions like these are best resolved not through a doubtful interpretive project focused on a pronoun dropped in 1946, but through the rulemaking process. There, policy interests on both sides can be accounted for and weighed in light of the "collective experience of bench and bar."  *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 114 (2009).